Daniel S. Bitton (SBN 320296)
dbitton@axinn.com
Jason T. Murata (SBN 319287)
jmurata@axinn.com
Patrick Doyle (SBN 329810)
pdoyle@axinn.com
Alexander S. Krois (SBN 334346)
akrois@axinn.com
Neelesh T. Moorthy (SBN 341155)
nmoorthy@axinn.com
Isabella L. Solórzano (SBN 345703)
isolorzano@axinn.com
Darpan R. Singh (SBN 347052)
dsingh@axinn.com

**AXINN, VELTROP & HARKRIDER LLP**
55 Second Street, 20th Floor
San Francisco, CA 94105
Telephone: 415.490.2000
Facsimile: 415.490.2001

*Attorneys for Plaintiff Mayito Guzman*

ROB BONTA
Attorney General of California
PREETI K. BAJWA
Supervising Deputy Attorney General
PETER B. NICHOLS, State Bar No. 289706
Deputy Attorney General
ERICK J. RHOAN, State Bar No. 283588
Deputy Attorney General
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone: (619) 321-5789
 Fax: (619) 645-2581
 E-mail: Ben.Nichols@doj.ca.gov
*Attorneys for Defendants
T. Boerum and D. Dorsey*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYITO GUZMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>D. DORSEY, et al.<br><br>  Defendants. | Case No. 19-cv-03757-HSG<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge: The Honorable Haywood S. Gilliam, Jr.<br>Trial Date: August 5, 2024<br>Action Filed: June 27, 2019 |

**I.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**II.     COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**III.    PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    **A.**     Only ESI created or received between January 2017 and the present will be preserved;

    **B.**     The parties have exchanged a list of the types of ESI they believe should be preserved and the custodians, including but not limited to: phones, computer, email, voicemail, texts, or instant messages.  The parties shall supplement the names of relevant custodians as soon as practicable.

    **C.**      The parties shall add or remove custodians as reasonably necessary.

**IV.    SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**V.     SEARCH TERMS**

The parties' use of search terms is not a substitute for and does not limit the parties' obligations to respond to, requests for production.  The parties will make a good faith effort to determine a reasonable number of search terms that are reasonably tailored and reasonably likely to identify responsive ESI.  Five business days after this Order is entered, the parties shall

exchange a list of intended terms to be used to search that is responsive to a party's discovery requests. The parties shall thereafter meet and confer on the selection of search terms, including any requests to include additional search terms. The parties will diligently work to generate final lists of search terms and the propounding party understands and agrees that based on the search terms, extensive reviews may need to be conducted by counsel. The parties will make good faith efforts to accommodate timely, reasonable requests for extensions of time to respond to discovery requests without court intervention. Documents will be produced on a rolling basis.

## VI. PRODUCTION FORMATS

The parties agree not to degrade the searchability of documents as part of the document production process.

**A.    TIFFs.** Responsive ESI must be derived from the original electronic media and converted to single page, TIFF images (with a minimum resolution 300 D.P.I. Group IV compression single-page) with an 8½ x 11-inch page size. Images shall be clearly labeled to show redacted material and the reason therefore, pursuant to Section VIII *infra*.

**B.    Native Format.** The parties generally agree to produce documents as TIFF images, rather than in native format. However, the parties agree to produce in native format certain file types, including spreadsheets (including Microsoft Excel files) and presentations (including Microsoft PowerPoint files). If Microsoft PowerPoint files require redactions, they will be produced as images only. If a party produces other file types in native format that require redactions, the parties may produce such file types as images or in a modified native format; if the latter, the redactions will be clearly designated or identified. Notwithstanding the foregoing, the parties reserve the right to request, on a document-by-document basis, production in native format, provided showing of a particularized and reasonable need (*e.g.*, to conduct statistical

analysis of raw data that is only reasonably accessible in native format; illegibility of the document in image-format; or poor usability of the document in image-format).

**C.    Image Load Files.**  Documents shall be accompanied by an image load file produced in Opticon (*.OPT) format that should reflect the logical document breaks and parent/child relationship between documents.

**D.    Database Load Files/Cross-Reference Files.**  Documents shall be accompanied by a Concordance delimited (*.DAT) load file containing the appropriate link fields and directory information for every file (*e.g.*, TIFF or native files) produced.

**E.    Metadata.**  The parties shall ensure that the metadata of all documents is preserved and produced, including when the data is converted from its native format to an image format.  The parties agree to produce the following metadata, to the extent such metadata exists:

- PRODBEG
- PRODEND
- PRODBEGATTACH
- PRODENDATTACH
- ATTACHRANGE
- CUSTODIAN
- EMAIL TO
- EMAIL FROM
- EMAIL CC
- EMAIL BCC
- EMAIL SUBJECT
- EMAIL SENTDATE
- EMAIL SENTTIME
- EMAIL RECEIVEDDATE
- EMAIL RECEIVEDTIME
- FILENAME
- AUTHOR
- DATELASTMODIFIED
- DATECREATED
- FILESIZE
- FILEEXTENSION
- TEXTLINK
- CONVERSATION INDEX
- ALLCUSTODIANS
- FILE PATH

If information in a metadata field is properly the subject of redaction, the field shall include the word "Redacted."

**F.    Unique IDs.**  Each image (or native file) shall be assigned and produced with a unique Bates number.

**G.     Text files.**  Parties will make reasonable efforts to produce extracted text, to the extent that it is available.  If extractable text does not exist, then Optical Character Recognition ("OCR") shall be performed for documents produced in TIFF and/or native format.  Extracted Text and OCR should be produced as follows:

   1.   Accompanying extracted text files shall be document level text files and should be named with the corresponding Production Bates number field followed by the extension ".TXT."

   2.   For documents containing redactions, OCR text will be substituted.  OCR Text files shall be document level text files and should be named with the corresponding Production Bates number field followed by the extension ".TXT."

Document level Extracted Text/OCR will be provided in a Text folder.  Text files will be named per the ProdBeg value for each document.  As indicated above, a DocText link will be included in the *.DAT file that will indicate the path to the text file for each record.  The text should not be included in the DAT itself, but instead in a separate folder or folders.

**H.     De-Duplication Methodology.**  Parties will make reasonable efforts to remove duplicates from ESI prior to production, on a global basis, using the MD5Hash, Sha1Hash or Sha256hash value.  The party will provide a multiple custodian field identifying each custodian of the document.  If a duplicate exists that is part of a family, the duplicate will only be removed if the entire family is removable as a duplicate (i.e., a single document will not be removed from a non-duplicate family even if the single document is a duplicate).

The parties may also perform email threading on custodial email ESI and produce only the most inclusive unique thread, so long as lesser-included emails and attachment(s) in the thread are contained within the final message for production.

**I.     Excluded ESI.**  Parties need not produce non-human readable electronic documents generated by the search terms (for example documents that include only machine-readable language), except upon a showing of good cause by the requesting party.

**J.     Hard Copy Documents.**  The parties agree they have a separate and independent obligation to produce hard-copy documents responsive to a discovery request.  Hard-copy documents shall be scanned and produced in the same manner as electronic documents (i.e., TIFF images and OCR).  The parties recognize that scanned hard-copy documents will not have, and need not be transmitted with, the metadata fields set forth *supra* in Section V.  Instead, hard-copy documents shall be produced with only the following metadata: ProdBeg; ProdEnd; ProdBegAttach; ProdEndAttach; and Custodian.

## VII.    REDACTIONS

**A.**     Prior to production, a party or third party may redact from ESI and hard-copy documents all privileged information, including information protected by the attorney-client and work product privileges.  Such redactions should clearly indicate that the material is being redacted because it is privileged, consistent with the requirements of the parties' stipulated protective order (Dkt. 64) ("RP" or "Privileged").

**B.**     Prior to production, a party or third party may redact from ESI and hard-copy documents all personal information, including the following: home address, home and cell phone numbers, names of spouses and children, credit card information, benefits information, compensation information, and personal information found in employee files and medical records.  Such redactions should clearly indicate that the material is being redacted because it is protected health information ("HIPAA") or protected personal information ("PI").  This paragraph applies, but is not limited to, information that a party or third party has a reasonable belief that it is legally

obligated (in this jurisdiction or others) to redact, such as personal information subject to European privacy laws.

## VIII. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and the initial production will be from the following sources and custodians: T. Boerum and D. Dorsey. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

## IX. DOCUMENTS PROTECTED FROM DISCOVERY

**A.** Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

**B.** Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

## X. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

## XI. CLAWBACK

The inadvertent production by any of the undersigned Parties or non-Parties to the Proceedings of any Document, Testimony or Information during discovery in this Proceeding without a Confidential designation, shall be without prejudice to any claim that such item is Confidential and such Party shall not be held to have waived any rights by such inadvertent

production. In the event that any Document, Testimony or Information that is subject to a Confidential designation is inadvertently produced without such designation, the Party that inadvertently produced the document shall give written notice of such inadvertent production within twenty (20) days of discovery of the inadvertent production, together with a further copy of the subject Document, Testimony or Information designated as Confidential (the "Inadvertent Production Notice"). Upon receipt of such Inadvertent Production Notice, the Party that received the inadvertently produced Document, Testimony or Information shall promptly destroy the inadvertently produced Document, Testimony or Information and all copies thereof, or, at the expense of the producing Party, return such together with all copies of such Document, Testimony or Information to counsel for the producing Party and shall retain only the Confidential designated Materials. Should the receiving Party choose to destroy such inadvertently produced Document, Testimony or Information, the receiving Party shall notify the producing Party in writing of such destruction within ten (10) days of receipt of written notice of the inadvertent production. Notwithstanding the foregoing, if the receiving Party Disclosed such Document, Testimony or Information to persons not authorized to receive such information before receipt of the Confidential designation, such Disclosure shall not be deemed a violation of this Stipulated Protective Order. In the event the receiving Party receives an Inadvertent Production Notice, the receiving Party shall either make reasonable efforts to promptly retrieve the Document, Testimony or Information or shall promptly notify the Designating Party of the distribution and the identity of the person who received the Document, Testimony or Information. This provision is not intended to apply to any inadvertent production of any Information protected by attorney-client or work product privileges. In the event that this provision conflicts with any applicable law regarding waiver

of confidentiality through the inadvertent production of Documents, Testimony or Information, such law shall govern.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: July 12, 2023

/s/Patrick Doyle
DANIEL S. BITTON (SBN 320296)
dbitton@axinn.com
JASON T. MURATA (SBN 319287)
jmurata@axinn.com
PATRICK DOYLE (SBN 329810)
pdoyle@axinn.com
ALEXANDER S. KROIS (SBN 334346)
akrois@axinn.com
NEELESH T. MOORTHY (SBN 341155)
nmoorthy@axinn.com
ISABELLA L. SOLÓRZANO (SBN 345703)
isolorzano@axinn.com
DARPAN R. SINGH (SBN 347052)
dsingh@axinn.com

**AXINN, VELTROP & HARKRIDER LLP**
55 Second Street, 20th Floor
San Francisco, CA 94105
Telephone:  415.490.2000
Facsimile:  415.490.2001
*Attorneys for Plaintiff*

Dated: July 12, 2023

/s/ Peter Ben Nichols
ROB BONTA
Attorney General of California

PREETI K. BAJWA
Supervising Deputy Attorney General

PETER B. NICHOLS
Deputy Attorney General

ERICK J. RHOAN
Deputy Attorney General
*Attorneys for Defendants*

IT IS SO ORDERED.

Dated: 7/13/2023

_____
Judge Haywood S. Gilliam, Jr.
UNITED STATES DISTRICT JUDGE